# UNITED STATES DISTRICT COURT

for the
Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )  Case No.  21-mj-1142 |
| 1249 S 23rd St, Philadelphia, Pennsylvania | ) |
| | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein.

located in the _____Eastern_____ District of _____Pennsylvania_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846, 841, 18 U.S.C. § 2, and 18 U.S.C. § 922(g) | conspiracy to distribute and distribution of controlled substances; and aiding and abetting; and possession of a firearm by a felon. |

The application is based on these facts:

See Attached Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
s/ Benjamin Hallowell
*Applicant's signature*

_____
Benjamin Hallowell, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   _____07/09/2021_____

_____
s/ David R. Strawbridge
*Judge's signature*

City and state:  Philadelphia, PA

_____
Hon. DAVID R. STRAWBRIDGE, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>1249 S 23rd St, Philadelphia, Pennsylvania | )<br>)<br>)   Case No.   21-mj-1142<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ Pennsylvania _____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein.

**YOU ARE COMMANDED** to execute this warrant on or before _____ July 22, 2021 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Hon. DAVID R. STRAWBRIDGE, U.S. Magistrate Judge  .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     07/09/2021 8:18 am                    s/ David R. Strawbridge
                                                                    *Judge's signature*

City and state:     Philadelphia, PA                    Hon. DAVID R. STRAWBRIDGE, U.S. Magistrate Judge
                                                                    *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>  21-mj-1142 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**A F F I D A V I T**

I, Benjamin Hallowell, Special Agent, Federal Bureau of Investigation ("FBI"),

Philadelphia, Pennsylvania, being duly sworn, state:

**A.    <u>INTRODUCTION</u>**

1.    I am a federal law enforcement officer of the United States within the meaning of

Federal Rules of Criminal Procedure 41(a)(2)(C), that is, a government agent who is engaged in

enforcing the criminal laws and is within any category of officers authorized by the Attorney

General to request a search warrant.

2.    I have been a Special Agent with the Federal Bureau of Investigation (FBI) since

February 2013.  I have received basic drug, gang, and criminal enterprise investigative training at

the FBI Training Academy located in Quantico, Virginia.  I am currently assigned to High

Intensity Drug Trafficking Area ("HIDTA")/Safe Streets Violent Drug Gang Task Force

("SSTF").  Prior to my current assignment, I was assigned to the FBI Anchorage Division where

I investigated drug and violent crime matters from 2013 to 2018.

3.    I have been assigned to SSTF for approximately three years.  My current

assignment requires extensive knowledge of matters related to illegal drug trafficking and violent

gang activity in and around Philadelphia, PA. As part of my duties as a Special Agent, I

investigate criminal activity related to drug trafficking, in violation of 21 U.S.C. § 841(a)(1).  My

experience includes, but is not limited to, conducting surveillance, interviewing witnesses,

conducting database checks, analyzing telephone records, writing affidavits for search warrants,

executing search warrants, and working with undercover agents and informants.  I am familiar

with matters including, but not limited to, the means and methods used by drug trafficking

organizations to purchase, transport, store, and distribute drugs, and the concealing of profits

1

generated from those transactions.  Through my training and experience, I have become familiar with the methods of operations typically utilized by individuals who distribute drugs.  I know that it is common practice for drug traffickers to routinely utilize telephones, mobile phones, prepaid phones, calling cards, public telephones, text messaging, counter-surveillance, false or fictitious identities, and coded communications to communicate with their customers, suppliers, couriers, and other conspirators for the purpose of insulating themselves from the detection of law enforcement.  Moreover, it is not unusual for them to initiate such mobile or prepaid phone service in the name of an associate or family member or in the name of a fictitious individual. The individuals often require the use of a telephone facility to negotiate times, places, schemes, and manners for importing, possessing, concealing, and distributing controlled substances, and for arranging the concealment of proceeds derived from the sale of controlled substances.  Drug traffickers rarely, if ever, expressly refer to controlled substances by name; instead, to conceal the true nature of their illegal activities and to thwart detection by law enforcement, drug traffickers refer to drugs and drug quantities in cryptic and/or coded language, using seemingly innocent terms.

4.      I have participated in numerous drug investigations, debriefed or participated in debriefings of numerous defendants, informants and witnesses who had personal knowledge regarding major drug trafficking organizations, and have participated in all aspects of drug investigations including conducting surveillance, analyzing information obtained from court-ordered pen register and trap and trace intercepts, and analyzing telephone toll information obtained as a result of subpoenas issued by the FBI.

5.      This affidavit is submitted in support of a search warrant for:

      a) **TARGET LOCATION**: 1249 S 23rd St, Philadelphia, Pennsylvania 19146,

more specifically described in Attachment A.

6.      I have personally participated in the investigation set forth below.  I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other special agents of FBI and other law enforcement; from my discussions with witnesses and confidential sources involved in the investigation; and from my review of records and reports relating to the investigation.  Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another FBI special agent, law enforcement officer, witness or cooperating source who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed.  Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included details of every aspect of the investigation.

7.      Based on the facts set forth in this affidavit, there is probable cause to believe that firearms and narcotics will be found at the **TARGET LOCATION**.

**B.      THE INVESTIGATION AND PROBABLE CAUSE**

8.      This application is submitted in support of an FBI investigation into a drug trafficking organization, believed to operate in South Philadelphia, within the Eastern District of Pennsylvania.  The requested warrant is for the search of a property were FLOYD was found and arrested for which there is probable cause to believe there will be firearms and narcotics.

9.      The FBI has been conducting a criminal investigation of The 234 Gang and SALEEM FLOYD.  FLOYD is a member of a violent local gang known as the 234 Gang.  The 234 Gang is a violent gang and drug trafficking organization (DTO) responsible for distributing

heroin/fentanyl, crack cocaine, and other narcotics in significant quantities throughout Philadelphia.  The 234 Gang has also engaged in acts of violence to advance their illegal activities.

10.     On July 8, 2021, a Grand Jury in the United States District Court for the Middle District of Pennsylvania returned an indictment charging FLOYD for violations of Title 21, United States Code, Section 846(a)(1), (b)(1)(B), 841(a)(1),(b)(1)(C) and Title 18, United States Code, Section 2. The indictment alleges from January 2020 through July 8, 2021, HURTT was a member of a DTO that distributed significant quantities of heroin and fentanyl in and around the area of Union, Montour, Columbia and Lycoming Counties, Pennsylvania within the Middle District of Pennsylvania.  The indictment also alleged that members of the conspiracy, including FLOYD, utilized cellular telephones to conduct their narcotics trafficking operations.

11.     The SSTF has conducted surveillances in the area of TARGET LOCATION.  The following facts support my belief that FLOYD will be inside TARGET LOCATION on the morning of July 9, 2021

a.  Law enforcement has conducted surveillance on TARGET LOCATION multiple times between March and June of 2021 and observed FLOYD come and go from the entrance multiple times.

b.  FLOYD is on probation with Philadelphia County Probation, they did a home visit with FLOYD at TARGET LOCATION on April 29, 2021. TARGET LOCATION is listed as FLOYD's primary residence with Philadelphia County Probation.

c.  A surveillance operation conducted on June 28, 2021, revealed that FLOYD was seen walking on the same block as TARGET LOCATION,

4

walking up and down the block and going to the corner store at 23rd and Oakford.

12.     Based on my training and experience, I know that those involved with narcotics trafficking commonly utilize their cellular telephones to communicate with co-conspirators to facilitate, plan, and execute their narcotics transactions.  For example, I know that narcotics traffickers often store contacts lists, address books, calendars, photographs, videos, and audio files, text messages, call logs, and voice mails in their electronic devices, such as cellular telephones, to be used in furtherance of their narcotics trafficking activities.

13.     In this investigation **TARGET TELEPHONE** has been used to communicate with co-conspirators to facilitate, plan, and execute their narcotics transactions.  The following paragraphs detail how FLOYD was involved in a conspiracy to traffic narcotics and how he utilized TARGET TELEPHONE to engage in, facilitate, and/or advance that illegal activity.

14.     On March 3, 2021 Troopers pulled over a vehicle occupied by NAIM TAYLOR, HURTT, SALEEM FLOYD, and MUJAHID GRANT.  Troopers found that HURTT had approximately 67 grams of fentanyl/heroin on his person, FLOYD had approximately 6.5 grams of crack cocaine on his person, and GRANT had approximately 15.5 grams of crack cocaine on his person.  A search of their vehicle yielded several boxes of unused blue glassine bags, typically used to package heroin into user amounts; they were found in the center console. GRANT gave the Troopers a false name of IBN EDWARDS throughout the encounter with law enforcement.  After the vehicle stop law enforcement determined the male who gave his name as IBN EDWARDS was actually MUJAHID GRANT, this was determined by the identification of photographs of GRANT.

15.     FBI agents and Task Force Officers (TFOs) in the Williamsport Resident Agency (RA), have been investigating this DTO.  FBI Williamsport observed members of the DTO conduct multiple narcotics sales in the Bloomsburg area.  Additionally, FBI Williamsport has conducted multiple controlled narcotics purchases from the DTO in the Bloomsburg area.  FBI Williamsport applied for a wiretap (TIII) on a phone, 267-441-5758, utilized by NAIM TAYLOR.  The TIII was authorized and signed by Judge Matthew Brann of the United States Middle District of Pennsylvania on April 6, 2021.  FBI Williamsport identified TAYLOR as a member of the DTO with a leadership position and conducted multiple controlled narcotics purchases in the Bloomsburg area in which TAYLOR sold narcotics to an FBI Confidential Human Source (CHS).  The TIII has recorded multiple phone calls and text messages where TAYLOR and other members of the DTO, such as FLOYD, discussed and facilitated narcotics trafficking utilizing their cell phones (communication devices). On April 23, 2021, Judge Matthew Brann, Middle District of Pennsylvania, signed an order renewing the authorization of the interception of wire and electronic communication to and from 267-441-5758, a telephone utilized by TAYLOR.

16.     The FBI Williamsport TIII recorded multiple communications in which FLOYD discussed narcotics trafficking.  The following are transcriptions of some of those conversations. (NOTE: For various reasons, such as poor audio quality, speakers mumbling, speakers slurring, and speakers talking very quietly; portions of the communications were unintelligible, the following transcriptions are the best reproductions of what was heard on the TIII.)

17.     On April 8, 2021 at approximately 1:05 PM, TIII session 148, recorded TAYLOR calling FLOYD and the following was discussed:

- NAIM TAYLOR (NT): "I'm going the Burg?  Caught by the cops.  Fuck that.  Man, you

gotta act right, you gotta be doing the Burg already.  They got a lot of cop cars and they

got some unmarked shit out here too."

- SALEEM FLOYD (SF): Cousin we ain't making crack yet, (but my?) cousin will come

  through.

- NT: Cous we get that pound, we get them pounds shit going be booming up in this jawn.

- SF: We need em.

   I believe based on my training and experience and my knowledge of this investigation that

the above conversation was about dealing drugs in Bloomsburg Pennsylvania and how dangerous

it was to do so because law enforcement was onto the DTO there.  TAYLOR and FLOYD were

discussing getting pounds of drugs to sell so that they could make money, possibly in the

Philadelphia area.

   18.   On April 10, 2021 at approximately 2:28 PM, TIII session 365, recorded TAYLOR

call FLOYD and the following was discussed:

- NT: I told her that I was picking up (UI).  He got me on a mission picking up money.

- SF: Whooo, is he high

- NT:  Nah he ain't high yet

- SF: Bruh he ain't high yet. He was.  Tell him how high he was yesterday.  I don't think

   he even knew how high he was bruh. They dropped him off in the house at five thirty

   I believe based on my training and experience and my knowledge of this investigation

that the above conversation was about picking up money that was related to drug dealing and it

was on behalf of a member of the DTO.

   19.      On April 13, 2021 at approximately 10:20 PM, TIII session 821, recorded

FLOYD calling TAYLOR and the following was discussed:

- SF: Where you at?

- NT: I'm on Bucknell

- SF: I'm walking around

- NT: Alright, bring that sack, let me hold it.

I believe based on my training and experience and my knowledge of this investigation that the above conversation was about TAYLOR telling FLOYD to bring the "sack", meaning a container holding a quantity of narcotics.

20.     On April 17, 2021 at approximately 11:26 PM, TIII session 1213, recorded TAYLOR calling FLOYD and the following was discussed:

- NT: Yo why the fuck TWIZZ and DUKE rob the white boys I mean rob MIKE's boy's young bull?

- SF: Whose young bulls?

- NT: The white boy young bulls.

- SF: What white boy young bull?

- NT: My white boys.

- SF: Do they know that they from the four? (NOTE: "the four" is known by law enforcement to refer to S 24th St and is a common reference to membership in the 234 Gang)

- NT: Yes they know TWIZZ whole thing they sent pictures of TWIZZ and everything.

- ……

- SF: Where they robbed them at?

- NT: No, they he ain't rob the white boys he robbed they young bull.

8

- SF: He robbed they young bull how much they he get?

- NT: Thirty-six sacks they trying I told them to give that shit back before they drop a check on his head.

- …….

- SF: You cant be robbing people and you robbing people that got money.

- NT: You robbing people and he even know who he rob.  BLACK, I'm like bro that young bull that you rob that ain't the person who shit that is TWIZZ like bro they called me all way from Cali bro this nigga called me since last night one in the morning BLACK.

- SF: And said what?

- NT: Talking about he umm that he I ain't even talked to HENNY I talked to CASEY.  I ain't talked to HENNY yet but they on TWIZZ ass they know his name they know his Instagram they know what he look like they sent me the pictures how many other you think sent it they sent the pictures to?

- SF: Umm goodness yup tell them alright well listen.

- NT: I tried to get it back to him bro but he ain't bring the shit to me.

- SF: I ain't gon lie but I say you pull your south Philly gangster card and be cool with the plug because if you give a favor to the plug out in Cali the plug call you from Cali you do them a favor.

- NT: I was doing bro I was about to pay them niggas myself blood.

- SF: No you wasn't.

- NT: I was so I was gonna pay them niggas myself because that shit drawn bro and they on some high pill head shit and that shit and they calling me.  They ain't calling nobody else, they calling me.  Then they called BOB.

- SF: They called BOB?

- NT: Yeah.

- ……

- SF: Right hold on listen.  Get wise, get dressed, cuz we on the yak, not on the yak, and you ain't Facetiming.  So call me back later.

I believe based on my training and experience and my knowledge of this investigation that the above conversation was about TAYLOR and FLOYD discussing how an associate of theirs, "TWIZZ", robbed the white boys with the Cali connect.  This investigation has determined that there is probable cause to believe that HENRY BANNING (HENNY), was the "Cali connect" and is a supplier of drugs, marijuana and possibly other drugs, that lives in Los Angeles, California, and ships drugs from California to the DTO in the Philadelphia region. TAYLOR and FLOYD were concerned that a 234 Gang member had robbed an associate of one of their sources of supply of narcotics and it could negatively impact the DTO's ability to traffic narcotics.

21.     On May 15, 2021 at approximately 11:43 AM, TIII session 3266, TAYLOR called FLOYD and the following was discussed:

- NT: Yo where you at?

- SF: I'm still at work

- NT: Can I grab the FN?

- SF: Yeah

10

- NT: Alright where it at?  In your spot in you room?

- SF: Uh huh it under the clothes in the top shelf

- NT: Alright

- NT: Damn in the clothes in the top shelf?

- SF: Yea , the back door open

- NT: ah gotta go the back too?

- SF: bitch you wanna go knock door and wake my mom up?

- …

I believe based on my training and experience and my knowledge of this investigation that the above conversation was about TAYLOR and FLOYD discussing FLOYD having TAYLOR's FN, in his room, in the top shelf of his drawer, under his clothes, in TARGET LOCATION.  I know that FN is a brand of a firearm and refers to a pistol.

22.     On May 22, 2021 at approximately 10:57 AM, TIII session 3689, TAYLOR called FLOYD and the following was discussed:

- SF: Hey you got your FN?

- NT: No I left my jawn at the spot.

- SF: Yeah I got it

- NT: It was dirty, that shit had me breaking out and shit

- SF: It was, what was dirty?

- NT: The strap

I believe based on my training and experience and my knowledge of this investigation that the above conversation was about TAYLOR and FLOYD discussing FLOYD having TAYLOR's FN (FN is the brand name of a pistol) at Target Residence.  TAYLOR went on to

describe how the gun was dirty and gave him a rash.  I know that "strap" is common slang for a firearm.

23.     On May 28, 2021 at approximately 11:58 AM, TIII session 4177, TAYLOR called FLOYD and the following was discussed:

- …

- NT: Mikey never have a chance to drop off my bundles?

- SF: nah ah

- NT: Dang, they burned you?

- SF: Might as well say that

- NT: Mikey …(unintelligible)… he only, he took three right?

- SF: Two, he gave the other one to Javon, I think

- NT: Oh, you gave one to Jay?

- SF: Nah, I got one right here, I got one right here on the table.

- NT: Oh, so you only gained two?

- SF: Yeah

- NT: Alright........Alright, the fuck you at?

- SF: I just got home

- …..

I believe based on my training and experience and my knowledge of this investigation that the above conversation was about TAYLOR and FLOYD discussing FLOYD having had multiple bundles of heroin at Target Residence and still having one bundle of heroin at Target Residence.  I know that a "bundle" is a slang term for an amount of heroin, and a bundle typically contains 10-15 individual bags of heroin.

12

24.     On May 30, 2021 at approximately 12:48 AM, TIII session 4347, FLOYD called
TAYLOR and the following was discussed:

- NT: Yo

- SF: Fuck you doing?

- NT: You already know

- SF: For real?

- NT: What I'm trying to say

- SF: Oh my goodness

- NT: Yeah what's up witchu though?

- SF: Shit

- NT: Bomberabomb bom bom bom down there

- SF: Haha what time you were down here?

- NT: Not too long ago. Why the fuck Chink done called me down there right?

- SF: Yep

- NT: Talking bout 'yeah', I get down there, he talking bout 'it's bomb' he seeing this
  he seeing that he seeing that, same trip we were seeing yesterday right?

- SF: Right

- NT: Soon as I pull the fuck on they follow my ass. I'm like this shit crazy.

- SF: No not again

- NT: Yes they did

- SF: Not again

- NT: Real rat Black. Soon as I pulled out I'm like why the fuck would he call me
  down there anyway for that if he know that going on why would you call me

13

down there

- SF: Mm mm mm.  Dumb as shit

- NT: Fuck yeah. I get followed as soon as I got out through the burbs going left left right left right left left left left gotta do all of that

- SF: Ah cuttin. Nigga you know it's a bomb down here

- NT: Same mah..I seen the same jawn

- SF: The same jawn?

- NT: Yep. And they in a Cherokee. They in a um the blue Cherokee bomb to the max

- SF: Mmm. They coming like that?

- NT: They in some shit.  I ain't go …. the same trap.  It was like four cars deep, five cars.

- SF: Oh goodness

- NT: And mention of that white van we been seeing?

- SF: What white van? The white work van?

- NT: No the white mini van. Bombed.

- SF: Right

- NT: They in that. That's them.

- SF: Hell they got the L's and everything?

- NT: They got everything Black.

- SF: Hold on I'm bout to Facetime you I'm Facetiming you.

I believe based on my training and experience and my knowledge of this investigation that the above conversation was about TAYLOR and FLOYD discussing vehicles that they

14

believed were law enforcement that were following TAYLOR.  On the afternoon of May 30th, 2021, approximately an hour after the above call, law enforcement conducted a vehicle stop on the vehicle TAYLOR was driving, a Nissan Rogue, in White Haven, Pennsylvania.  White Haven is in Northeastern Pennsylvania and is along the route to the Bloomsburg, Lewisburg, Williamsport area, where TAYLOR and the DTO had a history of trafficking narcotics.  A search of TAYLOR found that he had a plastic baggie in his person that contained approximately 11 grams of a white powdery substance that was suspected heroin/fentanyl.  A subsequent search of the vehicle yielded approximately 500 unopened glassine bags, these bags are typically utilized to package heroin into user amounts for narcotics trafficking.  There were also approximately 300 black rubber bands in the car, these rubber bands are typically used to bind 10-15 individual glassine bags of heroin into a bundle.  From my training and experience and knowledge of the investigation it is clear that on May 30th, 2021 TAYLOR was travelling to the Bloomsburg, Lewisburg, Williamsport area to traffic narcotics.  Furthermore, it is clear that the communication between TAYLOR and FLOYD showed that FLOYD had knowledge of TAYLOR's intended narcotics trafficking activities that day.

25.     TAYLOR is currently incarcerated in Columbia County Prison in Bloomsburg, Pennsylvania.  TAYLOR's communications while in prison are recorded.  On June 6, 2021 at approximately 6:36 PM, TAYLOR utilized the prison's phone system to call FLOYD on TARGET TELEPHONE.  TAYLOR and FLOYD discussed TAYLOR's charges, the amount of money he had on his books, and various other topics.  At one-point HURTT got on the phone and joined the conversation.

26.     As recently as June 6, 2021 FLOYD was recorded utilizing **TARGET TELEPHONE**. Based on all of the communications described above, investigators believe that **TARGET TELEPHONE** is an active phone and being used by FLOYD.

27.     On July 8, 2021 the Honorable Judge David R. Strawbridge authorized search warrant 21-mj-1138 authorizing the search of 1249 S 23rd Street, Philadelphia, Pennsylvania for the body of Saleem FLOYD and for **TARGET TELEPHONE**.

28.     On July 9, 2021 members of the FBI executed warrant 21-mj-1138. At approximately 6 am the FBI approached the residence where FLOYD was standing in the front doorway. The FBI asked FLOYD to exit the property and he complied. FLOYD did not have a cellphone at the time he came out of the residence. The agents then entered the property to search for **TARGET TELEPHONE**. Upon entering agents did a protective sweep of the house. There was one other person present. During the sweep of the house agents, approached the couch on the first floor and in plain view saw a phone on the couch. In the center of the seat cushion where the phone was found on the side of the couch closest to the door in the back cushion sticking out, in plain view, was the handle of a firearm. The firearm was located seven to ten feet from where agents had originally seen FLOYD. Special Agent Kevin Lewis brought FLOYD back into the residence and gave him his *Miranda* warnings. After FLOYD waived his *Miranda* rights Agent Lewis asked FLOYD about the firearm. FLOYD stated that the firearm was his.

29.     FLOYD has a prior felony conviction and is thus prohibited from possessing a firearm. Specifically, FLOYD was convicted in 2017 in Philadelphia County, Court of Common Pleas, for robbery, and he was sentenced to approximately 11.5 to 23 months' imprisonment and five years of probation. Your affiant is aware that during the course of state court proceedings, defendants are advised of the potential penalties they face and the sentences they receive.

16

Accordingly, your affiant knows that FLOYD knew he was convicted of a crime punishable by a term of imprisonment by one year or more.

## C.      METHODS OF NARCOTICS TRAFICKERS

30.      Based on your affiant's training and experience, your affiant is aware that drug traffickers often attempt to avoid detection and capture by law enforcement by operating motor vehicles, utilizing cellular telephone numbers, and residing at locations that cannot be attributed directly to them.

31.      Based on your affiant's training and experience, your affiant is aware that drug traffickers routinely utilize mobile cellular telephones and encrypted communication applications, such as WhatsApp and FaceTime, to discuss, coordinate, and complete drug trafficking transactions and operations in concert with one another.  In an attempt to avoid detection and compartmentalize their drug trafficking business, the members of the conspiracy regularly use and carry multiple cellular phones, often changing cellular phones, and using separate cellular phones to communicate with different drug suppliers and customers.

32.      Through my training and experience, individuals who participate in trafficking of illegal controlled substances keep such controlled substances, as well as paraphernalia, in their residences, vehicles, and storage units.  In addition, people who deal in illegal controlled substances also maintain books, records, receipts, notes, ledgers, bank records, money orders, and other papers relating to the importation, manufacture, transportation, ordering, sale, and distribution of illegal controlled subjects.  These books, records, receipts, notes, ledgers, bank records, money orders, etc., are maintained in locations to which the dealers in illegal controlled substances have ready access, such as in secure locations within their residences and their curtilage, the residences of family members, friends, and associates, the places of operation of

17

their drug distribution activities, such as stash houses or safe houses, in business locations with which the trafficker is associated, or in storage areas.  I know that individuals involved in narcotics distribution often maintain these records for lengthy periods of time, and often hide them in places in their homes to avoid detection.  Further, these individuals who deal in illegal controlled substances often store hard copy and electronic records associated with their illicit narcotics trafficking for long periods of time.  These records can be found on cellular phones, tablets, computers and electronic storage media.

33.     Through my training and experience, individuals who participate in trafficking of illegal controlled substances keep handguns, rifles, shotguns, submachine guns, or associated ammunition, to facilitate transactions in controlled substances. These items are often used for protection and/or enforcement and facilitate furthering narcotics trafficking.

**D.      THE TARGET LOCATION**

34.     The **TARGET LOCATION** is located at 1249 S 23rd Street, Philadelphia, Pennsylvania, and may be described as a two-story row home, comprised of a red brick and a small amount of white siding, with cement stairs.  The street numbers 1249 posted on the building to the left of the front door.  A color photograph of the location has been included in Attachment A.  The search of the **TARGET LOCATION** shall include the entire residence, trash cans, and storage containers.

**E.      CONCLUSION**

35.     Based on the aforementioned information, I submit that probable cause exists to search the **TARGET LOCATION**, further described in Attachment A, for firearms and narcotics, further identified and described in Attachment B; pursuant to Rule 41 of the Federal Rules of Criminal Procedure.

 s/ Benjamin Hallowell_____
Benjamin Hallowell
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on July 9, 2021


s/ David R. Strawbridge
Honorable David R. Strawbridge
United States Magistrate Judge

**Attachment A**

The **TARGET LOCATION** is located at 1249 S 23rd Street, Philadelphia, Pennsylvania, and may be described as a two-story brick row home with a small amount of white siding.  The front door appears to be wooden with a glass window.  A color photograph of the location can be found below. The search of the Target Location shall include the entire residence, trash cans, and storage containers.



## ATTACHMENT B

## ITEMS TO BE SEIZED FROM PHYSICAL PREMISES

1.      Any controlled substances, including but not limited to cocaine base (also known as crack), cocaine hydrochloride (also known as coke), heroin, and fentanyl.

2.      The means and instrumentalities utilized for the possession, and/or distribution of controlled substances, including but not limited to cocaine base (also known as crack), cocaine hydrochloride (also known as coke), heroin, fentanyl, and xylazine.

3.      Computers, computer records, and electronic storage media to include: secure digital cards (SD), compact flash cards, hard drives, USB drives. Books, records, receipts and other papers relating to the ordering, purchasing and distribution of controlled substances, including but not limited to cocaine base (also known as crack), cocaine hydrochloride (also known as coke), heroin, fentanyl, an xylazine.

4.      Books, records, receipts, bank statements and records, money orders and cashier's checks, passbooks, bank checks, safe deposit keys and other items evidencing obtaining, secreting, transferring, and/or concealment of assets and the obtaining, secreting, transferring, concealment and/or expenditure of money;

5.      Address and/or telephone books and papers reflecting names, addresses, telephone or pager numbers and its contents of co-conspirators, sources of supply and customers;

6.      United States currency and financial instruments, including but not limited to stocks and bonds;

7.      Photographs, negatives, video tapes, films and/or slides of co-conspirators, assets and/or controlled substances;

8.      Indicia of occupancy, residency, or ownership of the premises to be searched, including but not limited to utility and telephone bills, rental or purchase agreements and keys;

9.      Indicia of rental and/or ownership of vehicles used to facilitate any of the activities described in the affidavit in support of this warrant;

10.     Papers, tickets, notes, schedules, receipts and other items relating to domestic travel;

11.     Paraphernalia for use, packaging, cutting, weighing, and distributing cocaine base (also known as crack), cocaine hydrochloride (also known as coke), heroin, fentanyl, and xylazine, including, but not limited to scales, plastic bags, cutting agents, straws, vials, foils, boxes, and capsules;

12.     Any and all handguns, rifles, shotguns, submachine guns, or associated ammunition, or any other firearms found which may be used to facilitate transactions in controlled substances,

receipts for the purchase of firearms or ammunition, photographs of conspirators/associates with firearms;

13.    Mobile phones, cellular phones, mobile paging devices, Tracfones and any other prepaid wireless devices; and

14.    Any and all security devices including but not limited to safes, fire boxes, lock boxes, covert concealment devices, vaults, etc.

All of the above being evidence, fruits and instrumentalities of conspiracy to distribute and distribution of controlled substances in violation of 21 U.S.C. § 846, 841, 18 U.S.C. 2 and 18 U.S.C. § 922(g).